**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **CALISTO YEPEZ,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **3:13cv1564 (WWE)** |
| | : | |
| **EAGLE LEASING COMPANY,** | : | |
| **Defendant.** | : | |

<u>**MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS**</u>

In this action, Calisto Yepez claims that Eagle Leasing Company is liable for discrimination (1) in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.*; (2) negligent supervision; and (3) intentional infliction of emotional distress.

Defendant has moved to dismiss the complaint in its entirety.  For the following reasons, defendant's motion to dismiss will be denied.

<u>**BACKGROUND**</u>

In reviewing a motion to dismiss, the Court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of plaintiff.

Plaintiff is a Hispanic male, residing in New Haven, Connecticut.  He was born in Ecuador and Spanish is his first language.  Plaintiff commenced work with defendant Eagle Leasing Company in 1999.  During his tenure, plaintiff was called upon to train a non-Hispanic employee who became his supervisor.

Defendant demanded that plaintiff and other workers of Hispanic origin speak in English.  Plaintiff and other employees of Hispanic origin were subjected to dangerous and unsafe working conditions and to harassment, discrimination, retaliation and disparate treatment based on race, ethnicity, ancestry and national origin.  Unsafe

conditions included working without proper safety equipment, working in cold or wet conditions, lying in water, or climbing on snow and ice covered storage containers. When a Hispanic worker spoke out about dangers on the job, that worker would be ordered to do the job or sent home.  Defendant punished Hispanic workers, including plaintiff, who were injured on the job.

While moving barrels that contained chemicals, plaintiff broke a finger and was exposed to the chemicals.  Since that time, he has suffered nausea, dizziness and blurry vision.  Plaintiff also injured his back and shoulders when he fell while changing the floor of a flatbed trailer.  The supervisor responded by yelling at him.

After plaintiff was injured on the job due to unsafe working conditions, he complained to his supervisor, who yelled at him, called him stupid, and sent him home on the false pretenses of having no work for plaintiff.  When plaintiff complained to the owner about discrimination and mistreatment, the owner informed him that he had no rights, and thereafter, he was subjected to repeated drug testing.

Plaintiff alleges that he was constructively discharged on July 19, 2011, when the harassment, discrimination and unfair pressure became intolerable.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984).  The complaint must contain the grounds upon

2

which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).   A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**Disparate Treatment**

Defendant argues that plaintiff's disparate treatment claim claims fail to state a claim upon which relief can be granted.  Defendant contends that plaintiff has not alleged sufficient factual support to establish a prima facie case under Title VII, namely that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.  See de la Cruz v. New York City Human Resources Admin. Dept. Of Social Services, 82 F.3d 16, 20 (2d Cir. 1996).

"The prima facie case under McDonnell Douglas, however, is an evidentiary standard, not a pleading requirement."  Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510 (2002).  At this stage of the proceedings, in the context of employment discrimination cases, a plaintiff must plausibly allege that the employer took adverse action against him and that his race, color, religion, sex, or national origin was a motivating factor in the employment decision.  Vega v. Hempstead Union Free School Dist., 2015 WL 5127519, at 11 (2d Cir. 2015).   Plaintiff need only allege facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn v. City of New York, 2015 WL 4604250, at *7 (2d Cir. 2015).

3

Here, plaintiff has set forth specific facts concerning defendant's demands that English only be spoken, that derogatory insults were directed toward plaintiff as a Hispanic, and that defendant subjected Hispanics to unsafe, unreasonable working conditions.  Based on these allegations, plaintiff has established a plausible discriminatory animus against plaintiff based on his race, ethnicity and national origin. Plaintiff has also alleged a plausible adverse employment action in light of his claim of constructive discharge.  See Brittell v. Department of Correction, 247 Conn. 148, 178 (1998) ("Through the use of constructive discharge, the law recognizes that an employee's 'voluntary' resignation may be, in reality, a dismissal by an employer."). Accordingly, plaintiff's Title VII claim will not be dismissed for failure to state a claim.

**Hostile Environment**

Plaintiff asserts that defendant subjected him to a hostile work environment in violation of Title VII.  Defendant maintains that plaintiff has failed to establish a plausible hostile environment claim.

To make out a hostile work environment claim, a plaintiff must present evidence (1) that the conduct in question was objectively severe or pervasive, that is, that it created an environment that a reasonable person would find hostile or abusive; (2) that the plaintiff subjectively perceived the environment as hostile or abusive; and (3) that the plaintiff was subject to the hostile work environment 'because of' his race or ethnicity.  Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007).  A court must assess the evidence supporting a hostile work environment claim collectively and evaluate factors such as (1) frequency of the discriminatory conduct, (2) the severity of the conduct, (3) whether it is physically threatening or merely an offensive utterance, and (4) whether it

4

unreasonably interferes with an employee's work performance.  Harris v. Fork Lift Sys., Inc., 510 U.S. 17, 23 (1993).  The alleged facts relevant to a continuous English-only policy, degrading remarks, treatment and poor working condition support a plausible claim of a hostile work environment directed against Hispanic workers.

Defendant complains that the Court cannot determine whether the alleged conduct occurred within the limitations period and is therefore actionable.  However, plaintiff's failure to specify when the alleged conduct occurred is not fatal to his claim at this stage.  A hostile work environment is a continuing violation as "repeated conduct" is essential to the nature of the claim.  See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (U.S. 2002) ("Such claims are based on the cumulative effect of individual acts.").  As the Supreme Court clarified, the entire time period of the hostile environment may be considered by the court for purposes of determining liability so long as one act contributing to the claim occurs within the filing period.  Id. at 17.  A court must assess whether the incidents and episodes are related and then determine if such conduct occurred within the limitations period.  Krachenfels v. North Shore Long Island Jewish Health System, 2014 WL 3867560, *10 (E.D.N.Y. 2014).  Summary judgment is a more appropriate vehicle for the Court to assess whether the claim is actionable and whether the cumulative effect of the alleged conduct created an environment so severely permeated with discriminatory intimidation and ridicule and insult so as to alter the terms and conditions of the workplace.  See  Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002).  Accordingly, the motion to dismiss will be denied on the hostile environment claim.

**Retaliation**

To state a prima facie case of retaliation under Title VII, the plaintiff must allege that: (1) he engaged in a protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action. See Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 205–06 (2d Cir. 2006). Proof of the causation element "can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000).

Here, defendant attacks plaintiff's claim relevant to his allegations establishing an adverse employment action and causation.  An adverse employment action is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).  Plaintiff alleges that he voiced complaints to his supervisors regarding the dangers of the work assigned to Hispanic workers but that he was ignored.  He asserts that after he complained to a supervisor due to an injury, the supervisor became verbally abusive and sent him home on the false pretense of having no work for him to perform.  He has alleged that the owner responded to his complaints by telling him that he had no rights and that he was thereafter subjected to repeated drug tests.

Although his allegations are vague relevant to the specifics of the complaints,

plaintiff has plausibly alleged working conditions that could well dissuade a reasonable worker from making complaints of discriminatory treatment.  Further, plaintiff has also alleged that he was constructively discharged, which is considered an adverse employment action sufficient to support a retaliation claim.  Lent v. CCNH, Inc., 2015 WL 3463433, *7 (N.D.N.Y. 2015).  The complaint sets forth a plausible claim that plaintiff found working conditions so intolerable that he was forced to quit due to the retaliatory response to his complaints.  See Terry v. Ashcroft, 336 F.3d 128, 152 (2d Cir. 2003).  Further, construing the complaint most favorably to plaintiff, the allegations indicate that conditions deteriorated further following plaintiff's expression of the mistreatment of Hispanics.  The motion to dismiss will be denied on this claim.

**Negligent Supervision**

Plaintiff alleges that defendant is liable for the negligent supervision that resulted in a discriminatory, hostile and unsafe workplace.  Defendant argues that plaintiff's conclusory allegations fail to establish that defendant knew or reasonably should have known of any employee's propensity to engage in tortious conduct, or that plaintiff sustained an injury other than emotional distress or a Title VII injury of being the subject of discrimination.

To state a negligent supervision claim, a plaintiff must allege that he suffered an injury due to the defendant's failure to supervise an employee whom the defendant had a duty to supervise.  Abate v. Circuit-Wise, Inc., 130 F. Supp. 2d 341, 344 (D. Conn. 2001).  "Connecticut recognizes no general duty for employers to supervise their employees without the existence of some special facts or circumstances indicating that such monitoring or training is necessary."  Dumas v. The Price Chopper, Inc., 2010 WL

7

1889036 (Conn. Super. Ct).  Generally, a duty to use care arises out of the foreseeability of harm. Gutierrez v. Thorne, 13 Conn. App. 493, 500 (1988).

In this instance, it is plausible that defendant had a duty to ensure proper supervision to ensure a safe environment in light of the nature of work requiring safety equipment, the potential for injury, and the fact that injuries did occur to the workers. Plaintiff has made legally feasible allegations that he suffered harm due to defendant's failure to supervise an employee whom the defendant had a duty to supervise.

The Court agrees that plaintiff cannot sustain a claim for negligent supervision when the only alleged harm is an injury based on Title VII or emotional injury.  See Deguzman v. Kramer, 2005 WL 2030447, at *2 (D. Conn.) (unlawful discrimination alone is insufficient to satisfy injury for negligent supervision);  Antonopoulos v. Zitnay, 360 F. Supp. 2d 420, 430-31 (D. Conn. 2005) (employee cannot bring negligence-based claim against employer for emotional distress occurring during an ongoing employment relationship).  However, construing the complaint most liberally, plaintiff has alleged severe financial harm, physical harm that occurred from working in unsafe working conditions, and loss of employment.  Drawing all reasonable inferences in favor of plaintiff, plaintiff's claim of negligent supervision is plausible and will not be dismissed.

### Intentional Infliction of Emotional Distress

Defendant maintains that plaintiff's allegations fail to satisfy the elements of a claim of intentional infliction of emotional distress.

Liability for intentional infliction of emotional distress requires conduct exceeding all bounds of decent society and which is calculated to cause, and does cause, mental

8

distress of a very serious kind.  DeLaurentis v. New Haven, 220 Conn. 225, 266-67

(1991).  Connecticut courts have narrowly defined the boundaries of extreme and

outrageous conduct.  See Grasso v. Connecticut Hospice, Inc., 138 Conn. App. 759,

2012 WL 4872783, *8 (Oct. 23, 2012) (citing cases finding no intentional infliction of

emotional distress).

        In the employment context, an employer's routine adverse employment action,

even if improperly motivated, does not constitute extreme and outrageous behavior

unless conducted in an egregious and oppressive manner.  Sousa v. Rocque, 2012 WL

4967246, * 7 (D. Conn. Oct. 17, 2012).  However, in this case, plaintiff alleges that

defendant subjected him to degrading comments based on discriminatory animus;

forced him to work in unsafe conditions without proper equipment; and refused to help

him when became injured.  At this stage in the pleadings, plaintiff has stated a plausible

claim of outrageous conduct exceeding the bounds of decent society.  The Court will

deny the motion to dismiss on the claim of intentional infliction of emotional distress.

## <u>CONCLUSION</u>

        For the foregoing reasons, defendant's motion to dismiss [Doc. # 46] is DENIED.


        Dated this _9th___ day of September, 2015, at Bridgeport, Connecticut.


                        _____/s/_____
                        WARREN W. EGINTON
                        SENIOR UNITED STATES DISTRICT JUDGE